FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 13, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOMINIC DANNAN, a Washington State resident and Yakima City Police Officer,<br><br>                    Plaintiff,<br><br>    v.<br><br>CITY OF YAKIMA, a municipal corporation organized and existing under the laws of the state of Washington; YAKIMA POLICE DEPARTMENT; and JOHN DOE AND JANE DOE 1-50,<br><br>                    Defendants. | Case No:  1:24-CV-03111-MKD<br><br>ORDER GRANTING DEFENDANTS' FIRST MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>**ECF No. 16** |

Before the Court is Defendants' Motion for Partial Judgment on the

Pleadings, ECF No. 16.  The Court has reviewed the motion and record and is fully

informed.  For the reasons explained below, the Court grants the motion and grants

Plaintiff leave to file a Second Amended Complaint.

ORDER - 1

**BACKGROUND**

**A. Factual History**

The First Amended Complaint asserts the following facts. Plaintiff is a police officer in the patrol division of the Yakima City Police Department (the "Department") where he responds to dispatch calls for service, enforces traffic laws, patrols for criminal activity, performs arrests, and completes corresponding reports. ECF No. 2 at 2 ¶ 5.2. Throughout his employment with the Department, Plaintiff experienced "serious and harmful" issues with the radio communications equipment. *Id.* at 3 ¶ 5.4. These issues included weak radio reception which precluded use of the extended microphone, a "dysfunctional" radio tower on top of the police station, and a lack of radio reception at a 5-story medical center. *Id.* at 3 ¶¶ 5.6-5.8.

The Department, including Chief of Police Matthew Murray, was aware of these problems and radio failure was the subject of jokes throughout the Department. *Id.* at 3 ¶ 5.5. Chief Murray told Plaintiff that "radios are expensive" and budgetary concerns were offered as the "excuse[] for placing office[r] safety in jeopardy." *Id.* at 3 ¶¶ 5.9-5.10.

"[P]olice unions have addressed the issues of the radios not working over the past ten years." *Id.* at 4 ¶ 5.14.

The City of Yakima was also aware of the problems with the radios.  City Manager Cliff Moore communicated that "he would replace [the] radios at $150,000 per year until all the radios were replaced by 2024[.]"  *Id.* at 3 ¶ 5.7.  The Yakima County Commissioners also instructed the Yakima County Council "to place a 2/3 of 1% sales tax measure on the February 2022 election ballot to upgrade the radio system."  *Id.* at 3 ¶ 5.10.  Neither of these actions were completed at the time of the Amended Complaint.  *Id.* at 3 ¶¶ 5.7, 5.10.

On July 26, 2021, Plaintiff was shot in the foot while responding to an incident on patrol.  *Id.* at 2 ¶ 5.12.  Plaintiff attempted to call for backup from his fellow officers, who were less than a block away, but they did not hear his call.  *Id.* at 4 ¶ 5.13.  Plaintiff alleges that the delay in help from his fellow officers contributed to his injuries.  *Id.*

On November 26, 2023, Plaintiff filed a complaint with the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA") claiming that the inoperable police radios in the Department were a safety or health hazard and that the Department had taken no action to remedy the situation.  *Id.* at 4 ¶ 5.16.  Plaintiff alleges that following this report, he was retaliated against by his superiors at the Department who began an internal investigation and complaint against him contrary to Department procedures.  *Id.* at 4 ¶ 5.17.

ORDER - 3

**B. Procedural History**

Plaintiff alleges the following seven cause of action: (1) violation of Plaintiff's Due Process rights under 42 U.S.C. § 1983, (2) retaliation under the Washington State Law Against Discrimination ("WLAD"), (3) retaliation pursuant to OSHA and Washington Industrial Safety and Health Act ("WISHA"), (4) negligence, (5) intentional and negligent misrepresentation, (6) hostile work environment, and (7) intentional and negligent infliction of emotional distress. *Id.* at 4-7.

Defendants moved for partial judgment on the pleadings under Fed. R. Civ. P. 12(c). ECF No. 16 at 4. Plaintiff responded, ECF No. 21, [1] and Defendants replied, ECF No. 22.

---

[1] Plaintiff's Response included a Declaration with supporting exhibits that included Plaintiff's resume, correspondence, reports regarding radio equipment, and an additional Statement by Plaintiff. ECF No. 21-1. A court may not consider such matters outside the pleadings without converting a motion for judgment on the pleadings to a motion for summary judgment. *See Sigh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1075-76 (9th Cir. 2019); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment

ORDER - 4

# LEGAL STANDARD

## A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion to dismiss. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citations omitted). "A judgment on the pleadings is properly granted when,

---

under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Neither party requested conversion of this Rule 12(c) motion to a motion for summary judgment and Defendant objected to such a conversion. *See* ECF No. 21; ECF No. 22 at 2-3. Accordingly, the Court declines to convert this Rule 12(c) motion to a motion for summary judgment and does not consider Plaintiff's Declaration. *See Riser v. Cent. Portfolio Control Inc.*, No. 21-CV-5238, 2022 WL 815850, at *4 (W.D. Wash. Mar. 17, 2022) ("Rule 12 'gives courts the discretion to accept and consider extrinsic materials offered in connection with' a Rule 12 motion.") (quoting *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007)).

taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *United States v. Teng Jiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016) (quoting *Fajardo v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)).

### B. Leave to Amend

"[A]lthough Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of entry of judgment." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations and quotation marks omitted).

### DISCUSSION

Defendants seek judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the following claims: (1) retaliation under WLAD, (2) retaliation pursuant to OSHA and WISHA, (3) intentional and negligent misrepresentation, (4) hostile work environment, and (5) intentional and negligent infliction of emotional distress.[2] ECF No. 16 at 4. Plaintiff, in turn, argues a court must assume the truth of the Complaint's allegations, "as well as hypothetical facts, viewing both in the

---

[2] Defendants do not seek judgment on Plaintiff's 42 U.S.C. § 1983 or negligence claims. *See* ECF No. 16.

ORDER - 6

light most favorable to a nonmoving party" and that "a plaintiff is not required to plead a full *prima facie* case of each claim at the outset" but only needs "to plead facts giving fair notice of the claim and showing it is plausible (rather than merely possible) that the plaintiff is entitled to relief." ECF No. 21 at 5 (quoting *Didlake v. Wash. State,* 345 P.3d 43, 45 (Wash. Ct. App. 2015) and citing *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, No. 04-CV-562, 2006 WL 2290982, at *4 (S.D. Ind. Aug. 8, 2006) and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)) (emphases and quotation marks omitted).[3] Plaintiff argues that under this standard he has adequately pleaded each of his causes of action. *Id.*

**A. WLAD Claim**

Under WLAD, an employee may establish a prima facie case of retaliation through the *McDonnell Douglas* burden-shifting test. *Milligan v. Thompson*, 42 P.3d 418, 424 (Wash. Ct. App. 2002). A plaintiff must show that "(1) he engaged in a statutorily protected activity, (2) [the defendant] took adverse employment action against him, and (3) there is a causal link between the activity and adverse

---

[3] Plaintiff's reliance on *Swierkiewicz* is unavailing as the pleading standard articulated in *Swierkiewicz* "was explicitly overruled in [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007)]." *Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009).

ORDER - 7

action." *Id.* (citation omitted).  Once the plaintiff establishes a prima facie case,

the burden shifts to the defendant to present evidence of a legitimate,

nonretaliatory reason for its actions, and then the plaintiff must present evidence

that the reason is pretextual.  *Id.*

RCW 49.60.210 establishes three categories of whistleblowing activities

protected under WLAD.[4]  The first category protects an employee against the

"unfair practices" of discrimination or discharge for opposing "practices

forbidden" by RCW 49.60.  RCW 49.60.210(1).  With regard to "unfair practices

of employers," these "practices forbidden" include discrimination by an employer

---

[4] RCW 49.60.210 states in full:

> (1) It is an unfair practice for any employer, employment agency labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

> (2) It is an unfair practice for a government agency or government manager or supervisor to retaliate against a whistleblower as defined in chapter 42.40 RCW.

> (3) It is an unfair practice for any employer, employment agency, labor union, government agency, government manager, or government supervisor to discharge, expel, discriminate, or otherwise retaliate against an individual assisting with an office of fraud and accountability investigation under RCW 74.04.012, unless the individual has willfully disregarded the truth in providing information to the office.

ORDER - 8

based on an individual's "age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability." RCW 49.60.180(1)-(4).

The second category prohibits discrimination against a "whistleblower," RCW 49.60.210(2), defined as "[a]n employee who in good faith reports alleged improper governmental action to the auditor or other public official, as defined in subsection (7) of this section . . . ." RCW 42.40.020(10)(a). Subsection (7) defines a "public official" as "the attorney general's designee or designees; the director, or equivalent thereof in the agency where the employee works; an appropriate number of individuals designated to receive whistleblower reports by the head of each agency; or the executive ethics board." RCW 42.40.020(7). The statute further defines "auditor" as "the office of the state auditor" and "employee" as "any individual employed or holding office in any department or agency of *state* government." RCW 42.40.020(1), (2) (emphasis added).

The third category prohibits discrimination or retaliation against an individual assisting in an office of fraud and accountability investigation directed "at any act prohibited or declared to be unlawful in the public assistance programs

1  administered by the [D]epartment [of Social and Health Services ('DSHS')]."

2  RCW 74.04.012(1); *see also* RCW 49.60.210(3).

3       Defendants assert that Plaintiff fails to allege sufficient facts in the

4  Complaint to show that he meets the requirements for any of the three categories of

5  whistleblowing protected by RCW 49.60.210.  ECF No. 16 at 8.

6       The Court concurs and concludes that Plaintiff does not allege a prima facie

7  claim of retaliation under WLAD.

8       First, Plaintiff does not allege a claim under RCW 49.60.210(1).  Plaintiff

9  fails to allege any facts showing that he "has opposed any practices" or that he "has

10  filed a charge, testified, or assisted in any proceeding" regarding "practices

11  forbidden" by RCW 49.60, such as opposing discrimination by an employer based

12  on "age, sex, marital status, sexual orientation, race, creed, color, national origin,

13  citizenship or immigration status, honorably discharged veteran or military status,

14  or the presence of any sensory, mental, or physical disability or the use of a trained

15  dog guide or service animal by a person with a disability."  *See generally* ECF No.

16  2; *see also* RCW 49.60.210(1); RCW 49.60.180(1)-(4). Rather, Plaintiff alleges

17  that Defendants engaged in "forbidden practices because Officer Dannan has filed

18  a complaint and or assisted in a proceeding that exposes the City of Yaki[m]a to

19  liability and violations of the OSHA and WLAD[,]" ECF No. 2 at 5 ¶¶ 6.7-6.10,

20  neither of which are "practices forbidden" by RCW 49.60.

ORDER - 10

Second, Plaintiff does not allege a claim under RCW 49.60.210(2).  Plaintiff alleges that he complained to OSHA, not to the office of the state auditor, the attorney general's designee, the agency director where he worked, an individual designated to receive whistleblower reports by the agency head, or the executive ethics board.  ECF No. 2 at 4 ¶ 5.16; *see also* RCW 49.60.210(2); RCW 42.40.020(1), (7), (10)(a); *Davis v. Wash. State Dep't of Corr.,* No. 39915–6–II, 2010 WL 5209368, at *5 (Wash. Ct. App. Dec. 14, 2010) ("[The plaintiff] does not appear to have notified anyone other than his supervisor, who is not the auditor. . . . [H]e needed to report the alleged improper government action to the auditor."); *Mendoza de Sugiyama v. Wash. State Dep't of Transp.*, No. 45087–9–II, 2015 WL 563960, at *7 (Wash. Ct. App. Feb. 10, 2015) ("[The plaintiff's] alleged whistleblower complaints were not sent to the correct person designated in the whistleblower statute.  The statute clearly states to whom a whistleblower complaint can be made.").  Further, Plaintiff is an employee of the City of Yakima, not a state employee, and therefore does not qualify as a whistleblower.  ECF No. 2 at 2 ¶ 5.2; *see also* RCW 42.40.020(2); *Davis*, 2010 WL 5209368, at *5 ("[The plaintiff] failed to demonstrate that he was a whistleblower when he filed his EEOC complaint because he was not a state or department employee at the time.").

Lastly, Plaintiff does not allege a claim under RCW 49.60.210(3).  Plaintiff alleges that Defendants retaliated against him for assisting with an "accountability

investigation," ECF No. 2 at 5 ¶ 6.10, but RCW 49.60.210(3) only promises protection for individuals assisting with an "accountability investigation" directed "at any act prohibited or declared to be unlawful in the public assistance programs administered by [DSHS]." RCW 49.60.210(3); RCW 74.04.012(1). Plaintiff filed a complaint with OSHA regarding the safety issues caused by inoperable police radios, not a complaint regarding an unlawful act in the public assistance programs administered by DSHS. ECF No. 2 at 4 ¶ 5.16.

Plaintiff argues that WLAD should be "liberally" construed as "protecting employees who speak out against unlawful or unsafe practices[,]" and "must [also] be construed to encourage employees to report wrongdoing without fear." ECF No. 21 at 6-7 (emphasis omitted). However, WLAD says nothing about "unsafe practices" or "report[ing] wrongdoing" in general, but rather lays out specifically protected activities, none of which are alleged by Plaintiff. *See* RCW 49.60.[5]

---

[5] In support of his argument that WLAD should be liberally construed, Plaintiff cites to *Alonso v. Qwest Commc'ns Co., LLC*, 315 P.3d 610 (Wash. Ct. App. 2013) for the proposition that "a hostile workplace based on retaliation is actionable even if the underlying complaint was about a legally protected activity (there, complaining about wage-and-hour violations)." ECF No. 21 at 9 (emphasis omitted). In *Alonso*, however, the plaintiff was retaliated against for reporting

In sum, even taking Plaintiff's allegations as true, Plaintiff has not alleged a prima facie retaliation claim under WLAD.  Thus, the Court dismisses the claim, but grants Plaintiff leave to amend to allege a retaliation claim under WLAD.

**B. OSHA and WISHA Claims**

1. OSHA

29 U.S.C. § 660(c) protects employees who file a complaint with OSHA from discharge or discrimination by their employer.  An employee "who believes that he has been . . . discriminated against by any person in violation of [29 U.S.C. § 660(c)] may, within 30 days after such violation occurs, file a complaint with the Secretary [of Labor] alleging such discrimination."  29 U.S.C. § 660(c)(2).  The Secretary will commence an investigation as he deems appropriate and if he determines that the law was violated, "he shall bring an action in any appropriate United States district court against such person."  *Id.*

The plain language of 29 U.S.C. § 660(c) does not provide any right of private action.  "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary

---

discrimination based on "his military status, Mexican heritage, and disabilities, including his speech impediment," not for reporting wage-and-hour violations. 315 P.3d at 614-15.

of reading others into it. . . . In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)) (other citation and quotation marks omitted).  In 29 U.S.C. § 660(c), Congress provided the remedy for employees who report an OSHA violation—a complaint with the Secretary of Labor, not a private right of action.  *See Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994) ("OSHA violations do not themselves constitute a private cause of action for breach") (citing 29 U.S.C. § 653(b)(4)); *Scarborough v. Aegis Commc'ns Grp., Inc.*, 217 F.3d 840 (4th Cir. 2000) (unpublished) ("The district court correctly determined that there is no private right of action under OSHA.") (citation omitted); *Jelenic v. Campbell Plastics*, 159 F.3d 1347 (2d Cir. 1998) (unpublished) ("[His] claim . . . also fails because OSHA does not provide a private right of action.") (citations omitted); *Elliott v. S.D. Warren Co.*, 134 F.3d 1, 4-5 (1st Cir. 1998); *George v. Aztec Rental Ctr. Inc.*, 763 F.2d 184, 186 (5th Cir. 1985) ("We . . . hold that there is no private cause of action under federal law for a private employer's retaliatory discharge of an employee contrary to section 11(c)."); *Taylor v. Brighton Corp.*, 616 F.2d 256, 258 (6th Cir. 1980) ("[W]e hold that there is no private right of action under OSHA[']s 11(c), 29 U.S.C. s 660(c).").

As Plaintiff "is not entitled to a private right of action under OSHA," Defendants assert that the claim should be dismissed without leave to amend. ECF No. 16 at 11. "Plaintiff acknowledges that Section 660(c) itself isn't privately enforceable" but argues that his OSHA/WISHA retaliation claim "essentially invoke[es] the common-law tort of wrongful discharge (or adverse action) in violation of public policy, using OSHA/WISHA as the source of the public policy." ECF No. 21 at 10-11. While Washington courts have recognized the tort of wrongful discharge in violation of public policy, this requires an employee to be discharged from their employment, not just to suffer retaliation. *See Martin v. Gonzaga Univ.*, 425 P.3d 837, 843 (Wash. 2018); *Roberts v. Dudley*, 993 P.2d 901, 911 (Wash. 2000), *as amended* (Feb. 22, 2000) ("[T]he tort of wrongful discharge in violation of public policy clearly applies only in a situation where an employee has been discharged.") (footnote omitted). Plaintiff has not alleged that he was discharged and thus has not alleged a claim of wrongful discharge in violation of public policy, *see generally* ECF No. 2, nor can he. *See* ECF No. 21 at 13 (noting the "ongoing internal investigation and harassment").

In sum, as there is no private right of action for an OSHA retaliation claim, the Court dismisses this claim. As amending would be futile, Plaintiff is denied leave to amend his OSHA retaliation claim. Plaintiff is also denied leave to amend to allege a claim of wrongful *discharge* in violation of public policy based on

OSHA, as Plaintiff has represented that he has not been discharged from his employment.

### 2. WISHA

WISHA prohibits discharge or discrimination against "any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [RCW 49.17]." RCW 49.17.160(1). An employee who believes such discrimination has occurred "may, within 90 days after such violation occurs, file a complaint with the director [of the Department of Labor and Industries] alleging such discrimination." RCW 49.17.160(2). If the director determines there has been a violation, he may issue a citation "ordering appropriate relief, and may assess a civil penalty." RCW 49.17.160(4)(a). If the director finds insufficient evidence of a violation, he will issue a letter of closure and the employee may, within 30 days of the determination, institute a private action. RCW 49.17.160(5).

Defendants assert that Plaintiff has not alleged that he followed the procedures required under RCW 49.17.160, including filing a claim with the Washington State Department of Labor and Industries and receiving a letter of closure, and therefore his WISHA retaliation claim should also be dismissed. ECF No. 16 at 11.

ORDER - 16

Plaintiff alleges in his Complaint, "Governmental employees may not be discharged or discriminated against in retaliation for exercising their rights under [WISHA], including making complaints to L&I and OSHA and have standing to bring a private cause of action."  ECF No. 2 at 6 ¶ 6.12.  However, Plaintiff has not alleged that he filed a complaint with the director of the Department of Labor and Industries regarding the alleged discrimination nor that he has received a letter of closure.  *See* RCW 49.17.160(2), (5).  These procedural requirements must be met before Plaintiff may "institute the action on his . . . own behalf."  RCW 49.17.160(5); *see also Hause v. Spokane Cnty.*, No. 39659-2-III, 2024 WL 3533982, at *9 (Wash. Ct. App. July 25, 2024) ("[The plaintiff] forwards no facts that he filed a complaint under or related to chapter 49.17 RCW as demanded by RCW 49.17.160(1).  [The plaintiff] does not suggest that the director of the Department of Labor & Industries issued a letter authorizing him to file suit, as required by RCW 49.17.160(5).").

Plaintiff argues that the Complaint can be reasonably read as "Plaintiff claiming he *did* make the kind of complaint contemplated by RCW 49.17.160" and that "[w]hether he received a 'right-to-sue' letter is outside the pleadings; if he did, that fact can be proven in discovery, and if he did not, he could seek to cure that by now obtaining one or by amendment."  ECF No. 21 at 12.  However, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is

1   entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed.

2   R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action,

3   supported by mere conclusory statements, do not suffice." *Id.* at 678 (quoting *Bell*

4   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor is the court required to

5   accept as true allegations that are merely conclusory, unwarranted deductions of

6   fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d

7   979, 988 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir.

8   2001) (citation omitted). The Court declines to make the "unwarranted

9   deduction[]" that Plaintiff filed a complaint with the director of the Department of

10  Labor and received a letter of closure.

11      In sum, as Plaintiff has not alleged facts showing that he followed the

12  procedures required by WISHA before filing a private action, the Court dismisses

13  this claim. Plaintiff may amend his WISHA retaliation claim to allege he fulfilled

14  these procedural requirements but, as discussed above, may not amend this claim

15  to also allege a claim of wrongful *discharge* in violation of public policy based on

16  WISHA. *See Douglass-Woodruff v. Nevada, ex rel. v. Dep't of Mental/Health*

17  *Retardation, Div. of Rural Clinics, Carson Mental Health Facility*, 23 F. App'x

18  758, 759 (9th Cir. 2001) (finding that a plaintiff who "failed to allege that she had

19  complied with the pre-litigation requirements of 42 U.S.C. § 2000e–5(b)[,]"

20  namely obtaining a "right to sue" letter was "entitled to amend her complaint").

**C. Negligent and Intentional Misrepresentation Claims**

1. Negligent misrepresentation

> A plaintiff claiming negligent misrepresentation must prove by clear, cogent, and convincing evidence that (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007) (citation omitted); *see also ESCA*

*Corp. v. KPMG Peat Marwick*. 959 P.2d 651, 654 (Wash. 1998).

Defendants assert that the negligent misrepresentation claim should be dismissed because Plaintiff's Complaint does not allege that the misrepresentation involved a "business transaction," and that it was illogical for Plaintiff to reasonably rely *in 2021* on the promise made by City Manager Cliff Moore to replace the radios *by 2024*.  ECF No. 16 at 13.

Plaintiff, in turn, asserts that "employment dealings and workplace safety assurances do occur in the course of an employer's business and for the purpose of guiding employees' conduct" and that Washington has extended negligent misrepresentation to "employer-employee communications, particularly in hiring

or inducement contexts." ECF No. 21 at 16-17 (citing *Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 442 (Wash. 1994)).

Plaintiff alleges that "the City of Yakima, by and through its employees, intentionally or negligently made false representation that it intended or would replace inoperable police radios for the safety of its officers. This representation was false as the radios were not replaced, leading to [Plaintiff's] injury." ECF No. 2 at 6 ¶ 6.16. Plaintiff does not allege that the misrepresentation involved a "business transaction," nor can he. Plaintiff's assertion that *Havens* permits this type of employer-employee communication to qualify as a "business transaction" is misplaced. *See* ECF No. 21 at 17. In *Havens*, the plaintiff's claim "rested upon alleged misrepresentations as to promised authority and duration of employment." 876 P.2d at 446. While making inducements in the context of hiring may qualify as a business transaction, this case involves representations about replacing inoperable police radios. Plaintiff cites no authority supporting his proposition that the definition of a business transaction should be expanded to cover any workplace representation. *See* ECF No. 21 at 17 ("Here, the City's statements about fixing radios were intended to guide officers in continuing to rely on current equipment and procedures. That falls within the scope of providing information for others' guidance in their business (police work).").

ORDER - 20

In sum, even taking Plaintiff's allegations as true, Plaintiff has not alleged a prima facie negligent misrepresentation claim. Thus, the Court dismisses this claim. Plaintiff is denied leave to amend, as it would be futile. Plaintiff cannot allege "the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions." *Ross*, 172 P.3d at 704.[6]

2.  Intentional misrepresentation

To prove intentional misrepresentation, a plaintiff must prove by "clear, cogent, and convincing evidence" the following elements:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (footnote omitted); *see also Munoz v. Bean*, No. 72794–0–I, 2016 WL 885043, at *7 (Wash. Ct. App. Mar. 7, 2016). "A promise of future performance is not a representation of an existing fact and will not support a fraud claim." *W. Coast Inc. v. Snohomish Cnty.*, 48 P.3d

---

[6] Accordingly, the Court does not reach Defendants' argument that that it was illogical for Plaintiff to reasonably rely *in 2021* on the promise made by City Manager Cliff Moore to replace the radios *by 2024*. ECF No. 16 at 13.

997, 1000 (Wash. Ct. App. 2002) (footnote omitted); *see also Westby v. Gorsuch*, 50 P.3d 284, 291 (Wash. Ct. App. 2002) ("A representation of an existing fact must exist independently of (1) any future acts or actions on the part of the party making the statement; (2) the occurrence of any particular event in the future; and (3) the particular uses of the person to whom the statement is made.") (citation omitted).

Defendants assert that the claim of intentional misrepresentation should be dismissed because Plaintiff does not allege a representation of an "existing fact," rather "the alleged misrepresentations relate to future acts—the future replacement of police radios as allegedly represented by former City Manager Cliff Moore[,]" nor does Plaintiff allege City Manager Moore knew of the falsity of his statements regarding replacing police radios.  ECF No. 16 at 13.

Plaintiff asserts that "Washington law recognizes that a promise made without any intent to perform can amount to a misrepresentation of an existing fact – namely, the promisor's present state of mind or intentions" and that "even if the representation could be characterized as an opinion or forward-looking plan, the reasonableness of Plaintiff's reliance is a fact question."  ECF No. 21 at 17.

The Washington Court of Appeals has held, "'If a promise is made for the purpose of deceiving and with no intention of performing,' it may be actionable." *Flower v. T.R.A. Indus., Inc.*, 111 P.3d 1192, 1202 (Wash. Ct. App. 2005) (quoting

*Sprague v. Sumitomo Forestry Co.*, 709 P.2d 1200, 1206 (Wash. 1985)) (alteration omitted).  But Plaintiff has not alleged that Defendants made the promise to replace the radios with a purpose to deceive Plaintiff and that they had no intention of performing this promise.  Further, Plaintiff has not alleged that City Manager Moore knew the police radios would not be replaced by 2004.  ECF No. 2, at 3-4, 6-7; *see also Stiley,* 925 P.2d at 204.

In sum, even taking Plaintiff's allegations as true, Plaintiff has not alleged a prima facie intentional misrepresentation claim.  Thus, the Court dismisses this claim.  Plaintiff is granted leave to amend to allege an intentional misrepresentation claim.

**D. Hostile Work Environment Claims**

The Complaint alleges "common law hostile work environment."  ECF No. 2 at 7.  There is no such cause of action.  *See Holcomb v. Model T Casino Resort LLC*, No. 322CV94, 2024 WL 1619362, at *3 n.3 (D. Nev. Mar. 20, 2024).

Plaintiff now asserts that he is alleging retaliation under WLAD or Title VII.  ECF No. 21 at 20.  The Court dismisses this claim.  As Plaintiff has already pleaded a retaliation claim under WLAD, Plaintiff is denied leave to amend to allege a duplicative claim.  Plaintiff is granted leave to amend to allege a Title VII retaliation claim.

**E. Intentional and Negligent Infliction of Emotional Distress Claim**

1    1.  Intentional Infliction of Emotional Distress ("IIED")

IIED is also known as outrage in the state of Washington.  *Kloepfel v. Bokor*, 66 P.3d 630, 631 n.1 (2003) (citing *Snyder v. Med. Serv. Corp. of E. Wash*, 35 P.3d 1158, 1167 (Wash. 2001)).  To prove IIED, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress."  *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989) (quoting *Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987) and citing Restatement (Second) of Torts § 46 (1965)) (quotation marks omitted).

A claim of outrage requires more than "mere insults and indignities, such as causing embarrassment or humiliation[.]"  *Dicomes*, 782 P.2d at 1013.  A defendant's actions must be "[s]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975) (quotation marks omitted).  "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability."  *Dicomes*, 782 P.2d at 1013 (citing *Phillips v. Hardwick*, 628 P.2d 506, 510 (Wash. Ct. App. 1981)).

1    Defendants assert that Plaintiff has not alleged sufficient facts to establish

2    extreme and outrageous behavior and so his IIED claim should be dismissed.  ECF

3    No. 16 at 16.  Plaintiff asserts that his IIED "is adequately stated."  ECF No. 21 at

4    22.

5    Plaintiff alleges that he "suffered damages both special and general,

6    including but not limited to severe emotional distress, anxiety, depression,

7    emotional trauma, and other special and general damages, as will be proven at the

8    time of trial."  ECF No. 2 at 7 ¶ 6.23.  However, as to the other elements, Plaintiff

9    merely alleges, "During Plaintiff's employment with City of Yakima, Defendant's

10    discrimination of Plaintiff was in violation of RCW 49.60."  *Id.* at 7 ¶ 6.22.  Such a

11    "[t]hreadbare recital[]" does not sufficiently plead "extreme and outrageous

12    conduct" or "intentional or reckless infliction of emotional distress."  *Ashcroft*, 556

13    U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *Dicomes*, 782 P.2d at 1012

14    (citations omitted).

15    In sum, even taking Plaintiff's allegations as true, Plaintiff has not alleged a

16    prima facie IIED claim.  Thus, the Court dismisses this claim.  Plaintiff is granted

17    leave to amend to allege an IIED claim.

18    2.  Negligent Infliction of Emotional Distress ("NIED")

19    In order to recover for NIED, a plaintiff must prove "negligence, that is

20    duty, breach of the standard of care, proximate cause, and damages, and prove[]

the additional requirement of objective symptomatology." *Strong v. Terrell*, 195 P.3d 977, 982 (Wash. Ct. App. 2008) (citations omitted).  NIED can be a "cognizable claim in the workplace when it does not result from an employer's disciplinary acts or its response to a workplace 'personality dispute.'" *Id.* at 982-83 (quoting *Chea v. Men's Wearhouse*, Inc., 932 P.2d 1261, 1263 (Wash Ct. App.), *amended on reconsideration in part*, 971 P.2d 520 (Wash. Ct. App. 1997)).

Defendants argue that "a plaintiff will not be permitted to be compensated twice for the same emotional injuries" and that "Plaintiff can already recover for alleged emotional damages under his negligence action."[7]  ECF No. 22 at 9-10 (quoting *Francom v. Costco Wholesale Corp.*, 991 P.2d 1182, 1192 (Wash. Ct. App. 2000), *as amended on reconsideration* (Feb. 29, 2000)).  Alternatively,

---

[7] Defendants also initially alleged, "Plaintiff's claim for negligent infliction of emotional distress should be dismissed, not only for want of factual allegations, but because none of the facts he alleges meet the elements of what is a very limited cause of action meant only to protect bystander family members."  ECF No. 16 at 17.  However, "[u]pon further research, Defendants concede that the tort of [NEID] is not limited to only bystander family members as Defendants argued in their motion for partial judgment on the pleadings."  ECF No. 22 at 9.  Thus, the Court does not address this argument.

ORDER - 26

Defendants argue that "even if Plaintiff were allowed to double collect for his emotional injuries, his claim would still fail, because he doesn't allege that it was caused by negligence." *Id.* at 10.

Plaintiff agrees that he "would not recover twice for the same emotional harm," but asserts that his NIED claim is "sufficient to withstand a pleading challenge." ECF No. 21 at 22-23.

A plaintiff is entitled to plead alternative theories. As previously discussed, however, while Plaintiff pleads "objective symptoms," *Strong*, 195 P.3d, at 983, consisting of depression, anxiety, and trauma, he does not plead that that these symptoms were caused by Defendants' negligence. ECF No. 2 at 7 ¶ 6.23.

Thus, even taking Plaintiff's allegations as true, Plaintiff has not alleged a prima facie NIED claim, and the Court dismisses this claim. Plaintiff is granted leave to amend to allege an NIED claim.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' Motion for Partial Judgment on the Pleadings. Plaintiff shall file the Second Amended Complaint on or before August 22, 2025, addressing his claims as detailed above.

Accordingly, **IT IS ORDERED:**

1.     Defendants' Motion for Partial Judgment on the Pleadings, **ECF No. 16**, is **GRANTED**.

ORDER - 27

2.      Plaintiff shall file a Second Amended Complaint on or before **August 22, 2025**.  Leave to amend is limited to the claims discussed in this Order; Plaintiff may not add additional claims, parties, or requests for relief without separate leave of the Court.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order and provide copies to the parties.

DATED August 12, 2025.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE