FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 06, 2026

SEAN F. McAVOY, CLERK

1

2

3

4

5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

6

7

8

9

10

11

12

13

| | |
|---|---|
| DOMINIC DANNAN, a Washington State resident and Yakima City Police Officer,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF YAKIMA, a municipal corporation organized and existing under the laws of the state of Washington; YAKIMA POLICE DEPARTMENT; and JOHN DOE AND JANE DOE 1-50,<br><br>　　　　　　　　Defendants. | Case No:  1:24-CV-03111-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO ACCEPT LATE RESPONSE AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>**ECF Nos. 27, 28** |

14

15

16

17

18

19

20

　　Before the Court are Defendants' Second Motion for Partial Judgment on the

Pleadings, ECF No. 27, and Plaintiff's related Motion to Accept Late Response,

ECF No. 28.[1]  The Court has reviewed the motions and record and is fully

---

[1] The Court notes that Plaintiff's motion does not comply with LCivR 10(d), which

requires, "All pleadings must be prepared in the equivalent of either a

proportionately spaced typeface of 14 points or more or a monospaced typeface of

ORDER - 1

informed.  For the reasons explained below, the Court grants Plaintiff's Motion to

Accept Late Response, ECF No. 28, and grants in part and denies in part

Defendant's Second Motion for Partial Judgment on the Pleadings, ECF No. 27.

## BACKGROUND

### A. Factual History

The Second Amended Complaint asserts the following facts.  Plaintiff is a

police officer in the patrol division of the Yakima City Police Department (the

"Department") where he responds to dispatch calls for service, enforces traffic

laws, patrols for criminal activity, performs arrests, and completes corresponding

reports.  ECF No. 24 at 2 ¶ 5.2.  Throughout his employment with the Department,

Plaintiff experienced "serious and harmful" issues with the radio communications

equipment.  *Id.* at 3 ¶ 5.4.  These issues included weak radio reception which

precluded use of the extended microphone, a "dysfunctional" radio tower on top of

---

no more than 10.5 characters per inch (*e.g.*, size 12 Courier New).  Text and

footnotes must be double spaced."  Plaintiff's motion appears to be in a

proportionately spaced typeface of 12 points, rather than 14 points, and is not

double spaced.  The Court cautions Plaintiff to review and comply with the Local

Rules regarding formatting.

ORDER - 2

the police station, and a lack of radio reception at a 5-story medical center.  *Id.* at 3 ¶¶ 5.6-5.8.

The Department, including Chief of Police Matthew Murray, was aware of these problems and radio failure was the subject of jokes throughout the Department.  *Id.* at 3 ¶ 5.5.  Chief Murray told Plaintiff that "radios are expensive" and budgetary concerns were offered as the "excuse[] for placing office[r] safety in jeopardy."  *Id.* at 3 ¶¶ 5.9-5.10.

"[P]olice unions have addressed the issues of the radios not working over the past ten years."  *Id.* at 4 ¶ 5.14.

The City of Yakima was also aware of the problems with the radios.  City Manager Cliff Moore communicated that "he would replace [the] radios at $150,000 per year until all the radios were replaced by 2024."  *Id.* at 3 ¶ 5.7.  This action had not been completed at the time of the Second Amended Complaint.  *Id.*

The Yakima County Commissioners also instructed the Yakima County Council "to place a 2/3 of 1% sales tax measure on the February 2022 election ballot to upgrade the radio system."  *Id.* at 3 ¶ 5.10.  "This measure was placed on a special election and passed in April 2025 with approximately 71% of voters approving the proposal.  However, this is in the beginning stages and it is not known if the purchase has even been made, let alone acquiring the items to installation."  *Id.*

ORDER - 3

On July 26, 2021, Plaintiff was shot in the foot while responding to an incident on patrol.  *Id.* at 2 ¶ 5.1, 4 ¶ 5.12.  Plaintiff attempted to call for backup from his fellow officers, who were less than a block away, but they did not hear his call.  *Id.* at 4 ¶ 5.13.  Plaintiff alleges that the delay in help from his fellow officers contributed to his injuries.  *Id.*

On November 26, 2023, Plaintiff filed a complaint with the Washington State Department of Labor and Industries, claiming that the inoperable police radios in the Department were a safety or health hazard and that the Department had taken no action to remedy the situation.  *Id.* at 4 ¶ 5.16, 5 ¶ 5.34; *see also* ECF No. 24-1 at 42-44.  On July 25, 2024, Plaintiff also filed a similar complaint with the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA"), which was transferred to the Washington State Department of Labor and Industries.  ECF No. 42 at 4 ¶ 5.16, 5 ¶ 5.34; *see also* ECF No. 24-1 at 47.[2]

---

[2] Plaintiff's Second Amended Complaint provides inconsistent information regarding the dates these complaints were filed.  Plaintiff initially states that his Complaint to OSHA was filed on November 26, 2023.  ECF No. 24 at 4 ¶ 5.16.  Plaintiff later states his complaint to OSHA was filed on July 25, 2024, which aligns with the communication from OSHA, and that his report to the Washington State Department of Labor and Industries was filed on November 26, 2023, which

ORDER - 4

1    Plaintiff alleges that following these reports, he has experienced numerous

2   adverse actions by the Department including internal investigations and

3   corresponding discipline, violations of his due process rights, and being

4   disqualified from taking the sergeant's exam.  *Id.* at 4 ¶ 5.17, 6-7 ¶¶ 5.26-5.32, 7-

5   11 ¶¶ 5.36-5.58.  Plaintiff also alleges that the City of Yakima is responsible for

6   having his case with the Washington State Department of Labor and Industries

7   closed.  *Id.* at 7 ¶ 5.32, 10 ¶ 5.52, 24 ¶ 13.

8   **B. Procedural History**

9    Plaintiff's First Amended Complaint alleged the following seven cause of

10  action: (1) violation of Plaintiff's Due Process rights under 42 U.S.C. § 1983, (2)

11  retaliation under the Washington State Law Against Discrimination ("WLAD"),

12  (3) retaliation pursuant to OSHA and Washington Industrial Safety and Health Act

13  ("WISHA"), (4) negligence, (5) intentional and negligent misrepresentation, (6)

14

15

16
   _____

17  also aligns with the attached report to the Washington State Department of Labor

18  and Industries, ECF No. 24-1 at 42-44.  ECF No. 24 at 5 ¶ 5.24.  However, in the

19  same paragraph, Plaintiff also references "November 26, 2025," which appears to

20  be a typographical error as the first report was filed on November 26, 2023.

ORDER - 5

hostile work environment, and (7) intentional and negligent infliction of emotional distress.  ECF No. 2 at 4-7.

Defendants moved for partial judgment on the pleadings under Fed. R. Civ. P. 12(c).  ECF No. 16.  The Court granted Defendants' motion and granted Plaintiff leave to amend his Complaint as to the following causes of action: (1) retaliation under WLAD, (2) retaliation pursuant to WISHA, (3) intentional misrepresentation, (4) retaliation pursuant to Title VII, (5) intentional and negligent infliction of emotional distress.  ECF No. 23 at 7-27.  The Court dismissed, without leave to amend, Plaintiff's claims for retaliation pursuant to OSHA, negligent misrepresentation, and common law hostile work environment. *Id.* at 15-16, 21, 23.

Plaintiff subsequently filed a Second Amended Complaint, ECF No. 24, and Defendants again move for partial judgment on the pleadings.  ECF No. 27.

## LEGAL STANDARD

### A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion to dismiss.  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir.

2011) (citations omitted).  "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *United States v. Teng Jiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016) (quoting *Fajardo v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)).

## B. Leave to Amend

"[A]lthough Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of entry of judgment." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted).

## DISCUSSION

As an initial matter, Defendants seek to exclude Plaintiff's late response. ECF No. 30 at 1-4.  Defendants also seek judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the following claims: (1) retaliation under WLAD, (2) retaliation pursuant to WISHA, (3) intentional misrepresentation, (4) retaliation pursuant to Title VII, and (5) intentional and negligent infliction of emotional distress.  ECF No. 27 at 5.  Plaintiff, in turn, alleges that his Amended Complaint "added specific, detailed facts curing every deficiency the Court identified" when it granted Defendant's First Motion for Judgment on the Pleadings.  ECF No. 29 at 1.  The Court addresses each of these arguments in turn.

1    **A. Late Response**

2        Under Fed. R. Civ. P. 6(b)(1)(B), "[w]hen an act may or must be done

3    within a specified time, the court may, for good cause, extend the time . . . on

4    motion made after the time has expired if the party failed to act because of

5    excusable neglect."  The determination of whether neglect is excusable is "an

6    equitable one, taking account of all relevant circumstances surrounding the party's

7    omission."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S.

8    380, 395 (1993) (footnote omitted).  "These include . . . the danger of prejudice to

9    the [opposing party], the length of the delay and its potential impact on judicial

10   proceedings, the reason for the delay, including whether it was within the

11   reasonable control of the movant, and whether the movant acted in good faith."  *Id.*

12   (citation and footnote omitted); *Hassanshahi v. Drug Enf't Admin.*, 776 F. App'x

13   414, 415 (9th Cir. 2019) ("A motion to extend time after a filing deadline has

14   passed may be granted upon a showing of excusable neglect." (citing Fed. R. Civ.

15   P. 6(b)9(1)B(B); *Pioneer Inv. Servs. Co.*, 507 U.S. at 395)).

16       Plaintiff asserts that the delay in filing his response was due to excusable

17   neglect.  Specifically, counsel for Plaintiff asserts via a declaration that his

18   paralegal was overseas on bereavement leave in September 2025 and subsequently

19   resigned on October 6, 2025.  ECF No. 28 at 4 ¶ 3.  Due to her absence,

20   Defendant's Second Motion for Partial Judgment on the Pleadings, which was filed

on October 15, 2025, was not entered into the firm's case management system. *Id.* at 4 ¶ 4.  Plaintiff's counsel asserts that he discovered this "oversight" November 14, 2025, while reviewing the docket and "promptly prepared and filed [the Motion to Accept Late Response] and the Response the next day, November 15, 2025." *Id.* at 4 ¶ 5.  Plaintiff's counsel also asserts that his response was approximately 17 days late, that this short delay "will not impact the judicial proceedings as discovery is ongoing and other claims remain pending," and that he has acted in good faith throughout this litigation. *Id.* at 4 ¶¶ 6, 8-10.

Defendants assert that between Plaintiff's counsel's paralegal resigning on October 6, 2025, and Defendant's filing their Second Motion for Judgment on the Pleadings on October 15, 2025, Plaintiff's counsel had "nine days to determine how he would calendar future filing deadlines."  ECF No. 30 at 3.  While Defendants are correct that staff turnover is part of operating a legal practice, the Ninth Circuit has found calendaring mistakes to be instances of excusable neglect. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th Cir. 2010) (citing *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004)).  Further, Defendants do not point to any specific manner in which they were prejudiced.  ECF No. 30 at 3-4 ("Defendants are not going to presume to know how much time the Court requires

ORDER - 9

1  to review Defendants' reply to Plaintiff's response to its Second Motion.").[3]

2      Regarding the remaining factors, the Court concurs that the 10-day delay[4]

3  did not substantially impact the proceedings as discovery remains ongoing and is

4  not set to close until February 13, 2026.  ECF No. 13 at 17.  Further, there is no

5  evidence before the Court that Plaintiff's counsel did not act in good faith.

6

_____

7  [3] Relatedly, Defendants also ask the Court to exclude Plaintiff's Motion to Accept

8  Late Filing as untimely as, under LCivR 7(i)(2)(A), the calculated hearing date for

9  this motion, December 15, 2025, would have been later than the hearing date for

10  Defendants' underlying Second Motion for Partial Judgment on the Pleadings,

11  December 4, 2025.  As the hearing date for both motions has passed, the Court

12  declines to exclude Plaintiff's Motion for Late Filing on this basis.

13  [4] Plaintiff's Motion to Accept Late Response references a 14-day response period

14  and asserts that Plaintiff's response was 17 days late.  ECF No. 28 at 3.  However,

15  a motion for judgment on the pleadings is a dispositive motion.  *See* LCivR

16  7(b)(3).  Under LCivR 7(c)(2)(B), responses to dispositive motions shall be filed

17  within 21 days of the motion.  Here, Defendants' Second Motion for Judgment on

18  the Pleadings was filed on October 15, 2025.  ECF No. 27.  Thus, Plaintiff's

19  response was due on November 5, 2025.  Plaintiff filed his response 10 days later

20  on November 15, 2025.  ECF No. 28.

1    In sum, the Court finds Plaintiff has sufficiently established excusable

2    neglect and grants his Motion to Accept Late Response, ECF No. 28.

3    **B. WLAD Claim**

4    Under WLAD, an employee may establish a prima facie case of retaliation

5    through the *McDonnell Douglas* burden-shifting test. *Milligan v. Thompson*, 42

6    P.3d 418, 424 (Wash. Ct. App. 2002). A plaintiff must show that "(1) he engaged

7    in a statutorily protected activity, (2) [the defendant] took adverse employment

8    action against him, and (3) there is a causal link between the activity and adverse

9    action." *Id.* (citation omitted). Once the plaintiff establishes a prima facie case,

10   the burden shifts to the defendant to present evidence of a legitimate,

11   nonretaliatory reason for its actions, and then the plaintiff must present evidence

12   that the reason is pretextual. *Id.*

13   RCW 49.60.210 establishes three categories of whistleblowing activities

14   protected under WLAD.[5] The first category protects an employee against the

15

16

17   [5] RCW 49.60.210 states in full:

18       (1) It is an unfair practice for any employer, employment
         agency labor union, or other person to discharge, expel, or
19       otherwise discriminate against any person because he or
         she has opposed any practices forbidden by this chapter,
20       or because he or she has filed a charge, testified, or assisted
         in any proceeding under this chapter.

"unfair practices" of discrimination or discharge for opposing "practices

forbidden" by RCW 49.60.  RCW 49.60.210(1).  With regard to "unfair practices

of employers," these "practices forbidden" include discrimination by an employer

based on an individual's "age, sex, marital status, sexual orientation, race, creed,

color, national origin, citizenship or immigration status, honorably discharged

veteran or military status, or the presence of any sensory, mental, or physical

disability or the use of a trained dog guide or service animal by a person with a

disability."  RCW 49.60.180(1)-(4).

The second category prohibits discrimination against a "whistleblower,"

RCW 49.60.210(2), defined as "[a]n employee who in good faith reports alleged

improper governmental action to the auditor or other public official, as defined in

subsection (7) of this section . . . ."  RCW 42.40.020(10)(a).  Subsection (7)

defines a "public official" as "the attorney general's designee or designees; the

---

(2) It is an unfair practice for a government agency or government manager or supervisor to retaliate against a whistleblower as defined in chapter 42.40 RCW.

(3) It is an unfair practice for any employer, employment agency, labor union, government agency, government manager, or government supervisor to discharge, expel, discriminate, or otherwise retaliate against an individual assisting with an office of fraud and accountability investigation under RCW 74.04.012, unless the individual has willfully disregarded the truth in providing information to the office.

ORDER - 12

1   director, or equivalent thereof in the agency where the employee works; an

2   appropriate number of individuals designated to receive whistleblower reports by

3   the head of each agency; or the executive ethics board." RCW 42.40.020(7). The

4   statute further defines "auditor" as "the office of the state auditor" and "employee"

5   as "any individual employed or holding office in any department or agency of *state*

6   government." RCW 42.40.020(1), (2) (emphasis added).

7       The third category prohibits discrimination or retaliation against an

8   individual assisting in an office of fraud and accountability investigation directed

9   "at any act prohibited or declared to be unlawful in the public assistance programs

10  administered by the [D]epartment [of Social and Health Services ('DSHS')]."

11  RCW 74.04.012(1); *see also* RCW 49.60.210(3).

12      Defendants assert that Plaintiff's Second Amended Complaint does not

13  satisfy RCW 49.60.210(1)-(3). ECF No. 27 at 12. The Court concurs and

14  concludes that Plaintiff does not allege a prima facie claim of retaliation under

15  WLAD.

16      First, Plaintiff does not allege a claim under RCW 49.60.210(1), as he fails

17  to allege any facts showing that he "has opposed any practices" or that he "has

18  filed a charge, testified, or assisted in any proceeding" regarding "practices

19  forbidden" by RCW 49.60, such as opposing discrimination by an employer based

20  on "age, sex, marital status, sexual orientation, race, creed, color, national origin,

1:24-cv-03111-MKD    ECF No. 31    filed 01/06/26    PageID.484    Page 14 of 27

citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability." *See generally* ECF No. 24; *see also* RCW 49.60.210(1); RCW 49.60.180(1)-(4).[6]

Second, Plaintiff does not allege a claim under RCW 49.60.210(2), as he does not allege he complained to the office of the state auditor, the attorney general's designee, the agency director where he worked, an individual designated to receive whistleblower reports by the agency head, or the executive ethics board. *See generally* ECF No. 24; *see also* RCW 49.60.210(2); RCW 42.40.020(1), (7), (10)(a). Further, as an employee of the City of Yakima, not the state, Plaintiff does not qualify as a whistleblower. ECF No. 24 at 2 ¶ 5.2; *see also* RCW 42.40.020(2); *Davis v. Washington State Dep't of Corr.*, 158 Wash. App. 1054 (2010) ("[The plaintiff] failed to demonstrate that he was a whistleblower when he filed his EEOC complaint because he was not a state or department employee at the time.").

---

[6] Plaintiff again argues he "pled opposition to practices he reasonably and in good faith believed were forbidden by WLAD." ECF No. 29 at 3 (citing *Alonso v. Qwest Commc'ns Co., LLC*, 315 P.3d 610 (Wash. Ct. App. 2013). The Court previously addressed and rejected this argument. ECF No. 23 at 12 & n.5.

ORDER - 14

Third, Plaintiff does not allege a claim RCW 49.60.210(3), as he does not allege he assisted in an office of fraud and accountability investigation regarding public assistance programs administered by DSHS. *See* RCW 49.60.210(3); RCW 74.04.012(1).

While Plaintiff has failed to allege a retaliation claim under WLAD, Plaintiff now asserts, for the first time, that he is alleging a discrimination claim under WLAD based on "permanent foot nerve damage" and Post-Traumatic Stress Disorder ("PTSD"). ECF No. 29 at 3. The Court granted leave for Plaintiff "leave to amend to allege a *retaliation* claim under WLAD." ECF No. 23 at 13 (emphasis added). The Court did not grant Plaintiff leave to amend to allege a *discrimination* claim nor has Plaintiff moved for leave to file such a claim. *See id.* at 28 ("Plaintiff may not add additional claims, parties, or requests for relief without separate leave of the Court."); *see also Diemert v. City of Seattle*, 689 F. Supp. 3d 956, 963-66 (W.D. Wash. 2023) (showing retaliation and discrimination claims under WLAD are distinct). Yet Plaintiff now asserts he is bringing a discrimination claim under WLAD when his First Amended Complaint did not reference "disability," "Post-Traumatic Stress Disorder, or "PTSD." *See generally* ECF No. 2. As the Court did not grant Plaintiff leave to amend to bring a discrimination claim under WLAD, to the extent Plaintiff alleges such a claim it is dismissed. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1048 (C.D.

Cal. 2015) ("In cases like this one . . . where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken" (quoting *DeLeon v. Wells Fargo Bank, N.A.,* No. 10–CV–1390, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010))).

Last, Plaintiff also asserts, "Even if a technical statutory gap exists, Washington recognizes a common-law claim for retaliation in violation of public policy when no adequate statutory remedy exists." ECF No. 29 at 3. As the Court has previously explained, the tort of wrongful discharge in violation of public policy requires an employee to be discharged from their employment, not just to suffer retaliation, and Plaintiff does not allege that he was discharged. ECF No. 23 at 15 (citing *Martin v. Gonzaga Univ.*, 425 P.3d 837, 843 (Wash. 2018); *Roberts v. Dudley*, 993 P.2d 901, 911 (Wash. 2000), *as amended* (Feb. 22, 2000)).

In sum, even taking Plaintiff's allegations as true, Plaintiff does not allege a prima facie retaliation claim under WLAD and the Court dismisses this claim without leave to amend. *See Cafasso*, 637 F.3d at 1058 ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (alteration and citation omitted)). To the extent Plaintiff alleges a discrimination claim under WLAD, such a claim is also dismissed. *Gerritsen*, 112 F. Supp. 3d at 1048. As the date to amend pleadings

has passed, any further amendments to allege a discrimination claim under WLAD requires Court approval, which Plaintiff has not sought or received.

**C. WISHA Claim**

WISHA prohibits discharge or discrimination against "any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [RCW 49.17]." RCW 49.17.160(1). An employee who believes such discrimination has occurred "may, within 90 days after such violation occurs, file a complaint with the director [of the Washington State Department of Labor and Industries] alleging such discrimination." RCW 49.17.160(2). If the director determines there has been a violation, he may issue a citation "ordering appropriate relief, and may assess a civil penalty." RCW 49.17.160(4)(a). If the director finds insufficient evidence of a violation, he will issue a letter of closure and the employee may, within 30 days of the determination, institute a private action. RCW 49.17.160(5).

Defendants assert that Plaintiff still does not allege he received a letter of closure from the Washington State Department of Labor and Industries, and therefore his WISHA retaliation claim should be dismissed. ECF No. 27 at 14.

The Second Amended Complaint alleges, "The City of Yakima Police Department violated Washington State public policy through retaliation against Plaintiff, Yakima Police Officer Dominic Dannan for his complaints to both

ORDER - 17

Washington State Labor & Industries ("L&I"), RCW 49.17.160."  ECF No. 24 at 22 ¶ 6.11.  However, Plaintiff does not allege that he has received a letter of closure.  *See* RCW 49.17.160(2), (5).  This procedural requirement must be met before Plaintiff may "institute the action on his . . . own behalf."  RCW 49.17.160(5); *see also Hause v. Spokane Cnty.*, 31 Wash. App. 2d 1076, *review denied*, 3 Wash. 3d 1034, 559 P.3d 1014 (2024) (" [The plaintiff] does not suggest that the director of the Department of Labor & Industries issued a letter authorizing him to file suit, as required by RCW 49.17.160(5).").

Plaintiff again argues that it is improper for Defendants to "demand proof of a 'right-to-sue' letter" and that this is an "evidentiary issue."  ECF No. 29 at 4; *see also* ECF No. 21 at 2.  The Court previously rejected this argument and again declines to make the "unwarranted deduction[]" that Plaintiff received a letter of closure from the Washington State Department of Labor.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (citation omitted), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001).

In sum, as Plaintiff has not alleged facts showing that he followed the procedures required by WISHA before filing a private action, the Court dismisses this claim without leave to amend.  *See Cafasso*, 637 F.3d at 1058.

**D. Intentional Misrepresentation Claims**

To prove intentional misrepresentation, a plaintiff must prove by "clear, cogent, and convincing evidence" the following elements:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (footnote omitted); *see also Munoz v. Bean*, 192 Wash. App. 1060 (2016). "A promise of future performance is not a representation of an existing fact and will not support a fraud claim." *W. Coast Inc. v. Snohomish Cnty.*, 48 P.3d 997, 1000 (Wash. Ct. App. 2002) (footnote omitted); *see also Westby v. Gorsuch*, 50 P.3d 284, 291 (Wash. Ct. App. 2002) ("A representation of an existing fact must exist independently of (1) any future acts or actions on the part of the party making the statement; (2) the occurrence of any particular event in the future; and (3) the particular uses of the person to whom the statement is made." (citation omitted)).

Defendants acknowledge that Plaintiff "cure[d] the deficiencies" of his intentional misrepresentation claim previously identified by the Court by alleging "Defendants made a promise to replace the inoperative police radios with the purpose of deceiving Plaintiff and that they had no intention of performing this

ORDER - 19

promise." ECF No. 27 at 15. However, Defendants assert that the claim of intentional misrepresentation should still be dismissed because "it is illogical for Plaintiff to claim that he relied, and had a right to rely, on Moore's representation at the time Plaintiff was shot *in 2021* when the representation related to what would be accomplished by *2024*." *Id.*

The Washington Court of Appeals has held, "'If a promise is made for the purpose of deceiving and with no intention of performing,' it may be actionable." *Flower v. T.R.A. Indus., Inc.*, 111 P.3d 1192, 1202 (Wash. Ct. App. 2005) (quoting *Sprague v. Sumitomo Forestry Co.*, 709 P.2d 1200, 1206 (Wash. 1985)) (alteration omitted). Plaintiff now alleges that Defendants made the promise to replace the radios with a purpose to deceive Plaintiff and that they had no intention of performing this promise. Whether it was "illogical" for Plaintiff to rely on this promise is a factual issue for a later date. Plaintiff has corrected the pleading deficiencies previously identified by the Court as to this claim.

In sum, taking Plaintiff's allegations as true, Plaintiff has alleged a prima facie intentional misrepresentation claim. Accordingly, the Court denies the motion as to this claim.

**E. Title VII Claim**

Under Title VII it is unlaw for employer to discriminate against an employee, "because he has opposed any practice made an unlawful employment

ORDER - 20

1    practice by this subchapter, or because he has made a charge, testified, assisted, or

2    participated in any manner in an investigation, proceeding, or hearing under this

3    subchapter."  42 U.S.C. § 2000e-3(a).  "Unlawful employment practices" are those

4    that discriminate on the basis of an individual's race, color, religion, sex, or

5    national origin.  *Id.* § 2000e-2.

6        Defendants assert that Plaintiff has only "made threadbare allegations that he

7    'alleged a prima facie retaliation claim under WLAD and under Title VII.'"  ECF

8    No. 27 at 16 (quoting ECF No. 24 at ¶¶ 5.62, 6.56)).  Plaintiff, in turn, asserts that

9    he "pleads opposition to practices [he] reasonably believed violated Title VII, plus

10   post-injury perceived-disability (which is covered under the ADA and by

11   incorporation into Title VII retaliation standards)."  ECF No. 29 at 4.

12       Plaintiff's Second Amended Complaint fails to allege he opposed "unlawful

13   employment practices" that discriminated on the basis of an individual's race,

14   color, religion, sex, or national origin.  *See* ECF No. 24.  While Plaintiff asserts

15   that he "plead[ed] opposition to practices [he] reasonably believed violated Title

16   VII," federal courts have held that opposition to safety practices does not support a

17   Title VII relation claim.  *See Maner v. Dignity Health*, 350 F. Supp. 3d 899, 909

18   (D. Ariz. 2018) ("No retaliation claim exists under Title VII for an employer's

19   refusal to rehire an employee for reporting safety violations to the EEOC.

20   Elimination of safety violations in employment does not 'fairly fall within the

ORDER - 21

protection of Title VII to sustain a claim of unlawful retaliation.'" (alteration and citation omitted)), *aff'd,* 9 F.4th 1114 (9th Cir. 2021).  Thus, Plaintiff "did not have an objectively reasonable belief that Defendants' conduct violated Title VII." *Id.*

Alternatively, Plaintiff now asserts that the ADA is "incorporat[ed] into Title VII relation standards."  ECF No. 29 at 4.  While "[t]he statutory scheme and language of the ADA and Title VII are identical in many respects," *Buchanan v. Watkins & Letofsky, LLP*, 30 F.4th 874, 877 (9th Cir. 2022) (quoting *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006)), the text of Title VII contains no language incorporating the ADA nor does Plaintiff direct the Court to any case law to support this theory of incorporation.

As Plaintiff has failed to allege a retaliation claim under Title VII, the Court dismisses this claim without leave to amend.  *See Cafasso*, 637 F.3d at 1058.  To the extent Plaintiff alleges a claim under the ADA, such a claim is also dismissed. *Gerritsen*, 112 F. Supp. 3d at 1048.  As the date to amend pleadings has passed, any further amendments to allege a claim under the ADA requires Court approval, which Plaintiff has not sought or received.

**F.  Intentional and Negligent Infliction of Emotional Distress Claim**

1.  Intentional Infliction of Emotional Distress ("IIED")

IIED is also known as outrage in the state of Washington.  *Kloepfel v. Bokor*, 66 P.3d 630, 631 n.1 (2003) (citing *Snyder v. Med. Serv. Corp. of E. Wash*, 35 P.3d

1158, 1167 (Wash. 2001)).  To prove IIED, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989) (quoting *Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987) and citing Restatement (Second) of Torts § 46 (1965)) (quotation marks omitted).

A claim of outrage requires more than "mere insults and indignities, such as causing embarrassment or humiliation." *Dicomes*, 782 P.2d at 1013.  A defendant's actions must be "[s]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975) (quotation marks omitted).  "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes*, 782 P.2d at 1013 (citing *Phillips v. Hardwick*, 628 P.2d 506, 510 (Wash. Ct. App. 1981)).

Defendants assert that despite the Court dismissing with leave to amend the claim of IIED, Plaintiff's Second Amended Complaint merely repeats the allegations from his First Amended Complaint.  ECF No. 27 at 18.  Plaintiff asserts

that "Plaintiff has easily met the pleading threshold" for a claim of IIED by pointing to specific instances of retaliation against him. ECF No. 29 at 5.

Plaintiff's Second Amended Complaint contains additional allegations of numerous adverse actions by the Department including internal investigations and corresponding discipline, violations of his due process rights, and being disqualified from taking the sergeant's exam. *Id.* at 4 ¶ 5.17, 6-7 ¶¶ 5.26-5.32, 7-11 ¶¶ 5.36-5.58. Yet such conduct does not rise to the level sufficient to support a claim of IIED.

In *Dicomes*, the plaintiff alleged her employer intentionally prepared a false report "for the sole purpose of embarrassing, humiliating and then terminating [her]." 782 P.2d at 1013. The Washington State Supreme Court found that the employer "discharge[ing] plaintiff by privately delivering a termination letter, and briefly *responding* to media inquiries regarding the dismissal" could not "be considered atrocious and intolerable in a civilized society." *Id.* The Court also noted that even if this conduct rose to the level of malice, it was not sufficient for a claim of outrage. *Id.* (citing Restatement (Second) of Torts § 46, comment d (1965)); *see also Richards v. Healthcare Res. Grp., Inc.*, 131 F. Supp. 3d 1063, 1075 (E.D. Wash. 2015) ("Even assuming, in arguendo, that Defendants falsified Plaintiff's initials with intent to create a false basis for discharging her, under *Dicomes,* such conduct is insufficient as a matter of law to rise to the level of

being "atrocious, and utterly intolerable to a civilized community.").  Here,

Plaintiff does not allege any conduct by his employer that rises to the level of

falsifying reports to terminate him.

As Plaintiff has failed to allege a retaliation claim of IIED, the Court

dismisses this claim without leave to amend.  *See Cafasso*, 637 F.3d at 1058.

2.  Negligent Infliction of Emotional Distress ("NIED")

In order to recover for NIED, a plaintiff must prove "negligence, that is

duty, breach of the standard of care, proximate cause, and damages, and prove[]

the additional requirement of objective symptomatology." *Strong v. Terrell*, 195

P.3d 977, 982 (Wash. Ct. App. 2008) (citations omitted).  NIED can be a

"cognizable claim in the workplace when it does not result from an employer's

disciplinary acts or its response to a workplace 'personality dispute.'" *Id.* at 982-

83 (quoting *Chea v. Men's Wearhouse*, Inc., 932 P.2d 1261, 1263 (Wash Ct. App.),

*amended on reconsideration in part*, 971 P.2d 520 (Wash. Ct. App. 1997)).

Defendants assert that despite the Court dismissing with leave to amend the

claim of NIED, Plaintiff's Second Amended Complaint merely repeats the

allegations from his First Amended Complaint.  ECF No. 27 at 19.  Plaintiff does

not address this argument but merely asserts, "NIED is pled in the alternative

based on Defendants' negligent failure to maintain safe equipment and negligent post-injury treatment." ECF No. 29 at 5.[7]

Defendants are correct that Plaintiff's Second Amended Complaint repeats verbatim his allegations of NIED in the First Amended Complaint, *compare* ECF No. 24 at 24 ¶¶ 6.22-6.23, *with* ECF No. 2 at 7 ¶¶ 6.22-6.23, which the Court previously found insufficient to allege a prima facie NIED claim.

Thus, the Court dismisses this claim without leave to amend. *See Cafasso*, 637 F.3d at 1058.

## CONCLUSION

For the reasons stated above, the Court grants Plaintiff's Motion to Accept Late Response and grants in part and denies in part Defendants' Second Motion for Partial Judgment on the Pleadings.

Accordingly, **IT IS ORDERED:**

1.    Defendants' Second Motion for Partial Judgment on the Pleadings, **ECF No. 27**, is **GRANTED in part and DENIED in part**.

2.    Plaintiff's Motion to Accept Late Response, **ECF No. 28**, is **GRANTED**.

---

[7] The Court previously addressed that fact that Plaintiff may plead alternative theories. ECF No. 23 at 26-27.

ORDER - 26

1  **IT IS SO ORDERED.**  The District Court Executive is directed to file this

2  order and provide copies to the parties.

3  DATED January 6, 2026.

4  _s/Mary K. Dimke_
   MARY K. DIMKE

5  UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 27