FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 22, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DOMINIC DANNAN,

Plaintiff,

v.

CITY OF YAKIMA and YAKIMA POLICE DEPARTMENT,

Defendants.

No. 1:24-CV-03111-MKD

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**ECF Nos. 53, 72**

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 53. Edward Charles Chung represents Plaintiff. Thomas Miller, Ryan Bleek, and Stuart Cassel represent Defendants. The Court has reviewed the record and is fully informed. For the reasons explained below, the Court grants the motion.

**BACKGROUND**

Unless otherwise noted, the following facts are undisputed.

**A. Yakima Police Department's Radio System**

Defendant Yakima Police Department (YPD) uses radios as a primary means of communication among its officers. Over the years, YPD experienced

unreliable and weak radio transmissions and worked to address those problems. Plaintiff testified that he began discussing the radio problems with other officers in November 2018, told Chief Matthew Murray in 2020 that the radios were unsafe, and raised the problems with City Manager Bob Harrison in October 2021, after the shooting. ECF No. 57-1 at 101:9-24, 105:1-12, 123:18-124:9; *see also* ECF No. 69 at 2 ¶ A.3.

Defendants acknowledge that they knew of occasional poor reception and sporadic dead spots. They also acknowledge that a radio tower atop the police station remained disconnected and nonfunctional from at least 2012 until January or February 2024. Officers are trained to remove their portable radios from their belt holders and speak directly into the units. ECF No. 65-2 at 4.

Former City Manager Cliff Moore represented that the City of Yakima (the City) would allocate approximately $150,000 each year to replace portable police radios. The parties dispute the scope of that representation. Plaintiff contends Moore promised that all radios would be replaced by 2024. Defendants do not admit that Moore made that commitment and deny that the Motorola HT1250 radios remained unreplaced at the end of 2024. *Id.* at 4-5.

Defendants also participated in the Yakima County Interoperability Committee, which was developing a countywide radio system for YPD and other police and fire agencies. In July 2022, the committee retained Televate to prepare

plans for a new system. ECF No. 69 at 2-3 ¶¶ A.4-6. Internal YPD emails from 2023 described the annual allocation for portable radio replacements, a plan to restore the police station tower, and radio system problems that were "very old" and had persisted for years. Defendants admit those descriptions were accurate when made. ECF No. 65-2 at 7-8. Yakima County voters approved a sales tax increase to fund the countywide system in April 2025, and the project was proceeding through the proposal process as of March 2026. ECF No. 69 at 3 ¶¶ A.7-8.

**B. The July 26, 2021, Shooting**

At approximately 12:26 a.m. on July 26, 2021, Plaintiff and other YPD officers responded to a report of shots fired near 704 North Second Street in Yakima. Plaintiff drove into the area, saw a suspect running, parked, and left his patrol vehicle. Officer Nicholas Lombardi arrived in a separate patrol vehicle before Plaintiff exited his vehicle. *Id.* at 3 ¶¶ B.1-4. Plaintiff had not broadcast his location or requested assistance before the gunfire began. ECF No. 57-1 at 83:13-84:25.

After leaving his vehicle, Plaintiff twice ordered the suspect to show his hands. At approximately 12:27:52 a.m., the suspect opened fire. Lombardi saw the gunfire, and both officers broadcast that shots had been fired. Plaintiff also reported that he believed he had been hit in the leg. ECF No. 69 at 4 ¶¶ B.5-8.

By 12:28:05 a.m., Plaintiff had moved behind Lombardi's patrol vehicle. *Id.* at 4 ¶ B.9. Lombardi directed Plaintiff toward that cover, and the officers continued supporting one another while searching for the suspect. ECF No. 57-1 at 85:11-86:17. They continued broadcasting the suspect's location and coordinating with dispatch. Multiple officers joined the search, and the suspect was taken into custody at approximately 12:31 a.m. ECF No. 69 at 4 ¶¶ B.10-12.

Plaintiff contends that the radio system failed as he attempted to communicate with officers approximately a half block away. ECF No. 57-1 at 87:15-88:24; ECF No. 64-1 at 1 ¶ 2. Defendants dispute that a radio problem prevented a request for assistance from being received. ECF No. 65-2 at 5-6. Plaintiff contends that the radio failure forced him to pursue the suspect "for over five minutes while wounded." ECF No. 64-1 at 1 ¶ 2. The parties' joint statement places the shooting at approximately 12:27:52 a.m., Plaintiff's movement behind Lombardi's vehicle at 12:28:05 a.m., and the suspect's arrest at approximately 12:31 a.m. ECF No. 69 at 4 ¶¶ B.6, B.9, B.12.

After the suspect was detained, Plaintiff determined that he had been shot in the foot. He received medical care at the scene and at a hospital and later received benefits from the Washington State Department of Labor and Industries (L&I). *Id.* at 5 ¶¶ B.13, B.15.

**C. The 2024 Internal Affairs Investigation**

On May 24, 2024, Plaintiff participated in a traffic stop in Yakima. A bystander, Christopher Vargas, recorded Plaintiff and the other officers. Plaintiff arrested Vargas and transported him to jail, but the county prosecutor declined to pursue charges. Vargas later posted his recording online. *Id.* at 5-6 ¶¶ C.1-5.

YPD required Plaintiff to complete training concerning interactions between law enforcement officers and persons recording police activity. *Id.* at 6 ¶ C.6. On June 6, 2024, YPD notified Plaintiff that it was investigating a complaint against him. YPD interviewed Plaintiff on August 5, 2024, after providing him with a written explanation of his rights and responsibilities. The three other officers involved in the traffic stop were also interviewed. *Id.* at 6 ¶¶ C.7-9.

YPD completed the investigation on August 20, 2024, and provided Plaintiff with written findings. *Id.* at 6-7 ¶¶ C.10–11. YPD sustained two policy violations but imposed only the training Plaintiff had already completed, and Plaintiff suffered no financial loss. *Id.* at 6-7 ¶¶ C.10–12; ECF No. 57-1 at 174:1-175:19.

**D. The 2025 Internal Affairs Investigation**

On March 9, 2025, Plaintiff responded to a reported burglary at the Yakima Visitor Center. Officers took a suspect into custody and transported her to a hospital for evaluation. YPD later opened an investigation into Plaintiff's use of force during the encounter. ECF No. 69 at 7 ¶¶ D.1-4.

A May 23, 2025, notice advised Plaintiff that Chief Shawn Boyle was considering discipline. The notice described the incident, identified eight uses of force under review, summarized the evidence and applicable policy, and identified the contemplated discipline. It also scheduled a hearing, advised Plaintiff that he could present matters of refutation, explanation, or mitigation, and informed him that he could be accompanied by a union representative or attorney. ECF No. 57-33 at 2-8.

Plaintiff attended the hearing with union representation. He and his representatives presented his account of the incident and his disagreement with the investigation's findings directly to Boyle. ECF No. 69 at 8 ¶¶ D.8-9. On July 7, 2025, Boyle issued a final disciplinary decision. The discipline consisted of an eight-hour suspension, deescalation training, a six-month performance improvement plan, and a six-month suspension from the Field Training Officer (FTO) program. *Id.* at 8 ¶¶ D.10-11; ECF No. 57-35 at 4-5.

**E. Procedural History**

Plaintiff filed the original Complaint on July 25, 2024, and the First Amended Complaint on October 23, 2024. ECF Nos. 1, 2. Defendants answered and moved for partial judgment on the pleadings. ECF Nos. 6, 16. The Court granted the motion and permitted Plaintiff to amend certain claims. ECF No. 23.

Plaintiff filed the operative Second Amended Complaint on August 22,

2025. ECF No. 24. Defendants answered and again moved for partial judgment on the pleadings. ECF Nos. 26, 27. On January 6, 2026, the Court granted the motion as to Plaintiff's claims for retaliation under the Washington Law Against Discrimination, the Washington Industrial Safety and Health Act, and Title VII, as well as his claims for intentional and negligent infliction of emotional distress, and denied the motion as to intentional misrepresentation. ECF No. 31.

Following those rulings, three claims remain under the Second Amended Complaint. In Count I, Plaintiff alleges that Defendants violated his procedural due process rights by failing to address known radio problems and by later subjecting him to internal investigations, discipline, and related employment actions after he complained. ECF No. 24 at 13 ¶¶ 6.1-6.7. In Count IV, Plaintiff alleges that Defendants negligently failed to provide and maintain operable police radios and that a radio failure caused or aggravated the injuries he suffered during the July 2021 shooting. *Id.* at 22 ¶¶ 6.13-6.15. And in Count V, Plaintiff alleges that Defendants intentionally misrepresented that they would repair or replace the radio system and that he relied on those representations to his detriment. *Id.* at 23 ¶¶ 6.16-6.22.

**LEGAL STANDARD**

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (citation omitted). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the record and the evidence that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record, "specific facts" showing that there is a genuine dispute of material fact for trial. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (citation omitted). "Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inference from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## DISCUSSION

Defendants move for summary judgment on Plaintiff's remaining procedural due process, negligence, and intentional misrepresentation claims. ECF No. 53. The Court addresses each claim in turn.

### A. Procedural Due Process

Defendants move for summary judgment on Plaintiff's due process claim. They argue that the 2024 investigation did not deprive Plaintiff of a protected interest, that Plaintiff received constitutionally adequate process before the 2025 discipline, and that he cannot establish municipal liability. ECF No. 53 at 4-12. Plaintiff responds that Defendants ignored unsafe radio conditions and later subjected him to retaliatory investigations and discipline after he complained. ECF No. 64 at 7-8.

A Fourteenth Amendment procedural due process claim requires a protected liberty or property interest, a governmental deprivation of that interest, and constitutionally inadequate process. *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 743 (9th Cir. 2025). Viewing the evidence and drawing all reasonable inferences in Plaintiff's favor, the parties' disputes concerning the radio system

and Defendants' motives are not material to whether Plaintiff suffered a protected deprivation or received constitutionally inadequate process.

First, Plaintiff's evidence concerning the radios does not establish a deprivation of a protected liberty or property interest. Even accepting his evidence that Defendants knew the radio system was unreliable and did not correct the problems promptly, the Due Process Clause does not require a municipal employer to provide a safe workplace. *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992). An allegedly retaliatory motive for the later investigations establishes neither a protected deprivation nor constitutionally inadequate process.

Second, the 2024 investigation caused no protected deprivation. YPD gave Plaintiff written notice of the complaint, advised him of his rights, interviewed him, and provided written findings. ECF No. 69 at 6 ¶¶ C.7-11. Although YPD sustained two policy violations, the only consequence was training Plaintiff had already completed. He was not suspended, lost no pay, and received no additional discipline. *Id.* at 7 ¶ C.12; ECF No. 57-1 at 174:14-175:19. Plaintiff identifies no independent source giving him an entitlement to remain free from remedial training, and the training did not prevent him from continuing his occupation. *See Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1029-30 (9th Cir. 2010). Any failure to follow YPD's internal procedures, without a protected deprivation, does not establish a federal due process violation. *See Cousins v.*

*Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).

Third, the 2025 investigation resulted in an eight-hour suspension and other discipline. The Court assumes that the City's for-cause civil service rules gave Plaintiff a protected interest in the pay and employment privileges affected by that discipline. The undisputed record nevertheless establishes adequate process. Defendants gave Plaintiff detailed written notice identifying the incident, the policy under review, the evidence, each use of force at issue, and the contemplated discipline. ECF No. 57-33 at 2-8. Plaintiff attended the hearing with union representatives and presented his account and objections directly to Boyle. ECF No. 69 at 7-8 ¶¶ D.5-9. Plaintiff acknowledged that he was able to explain his position. ECF No. 57-1 at 204:20-205:12. After the hearing, Boyle reduced the contemplated suspension from 24 hours to eight hours and issued a written decision. ECF No. 57-33 at 7; ECF No. 57-35 at 4-5.

These procedures provided the notice, explanation of the evidence, and opportunity to respond required before discipline. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985). The civil service rules also permitted Plaintiff to appeal to the Civil Service Commission, receive a public hearing, appear with counsel, seek modification of the discipline or reinstatement and back pay, and obtain review in superior court. ECF No. 57-37 at 30-35. An allegedly biased pre-disciplinary decisionmaker does not deny due process when impartial

post-disciplinary review is available. *Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991). Plaintiff identifies no constitutional defect in the Commission's review process.

Plaintiff does not develop a separate due process theory or identify evidence that the applicable rules guaranteed him access to a particular promotional examination, a patrol assignment, or future overtime. Boyle imposed the suspension from FTO duties only after giving Plaintiff notice and a hearing. Similarly, Plaintiff's own allegations show that he challenged an earlier closure of his L&I claim and obtained agreement that the claim should be reopened. ECF No. 24 at 7 ¶¶ 5.34-35.

Plaintiff's asserted reputational harm also does not establish a due process violation. Such a claim requires public disclosure of a contested stigmatizing statement together with the denial of a more tangible interest, such as employment. *Chaudhry v. Aragón*, 68 F.4th 1161, 1170-71 (9th Cir. 2023). Even assuming the personnel records or referral to the Washington State Criminal Justice Training Commission satisfied the public disclosure requirement, the 2024 findings caused no tangible alteration of Plaintiff's employment status. The 2025 discipline followed constitutionally adequate procedures. The Commission advanced the referral only to intake review, and no evidence shows that it revoked or suspended Plaintiff's certification. ECF No. 24-1 at 66-67.

Finally, because Plaintiff establishes no underlying constitutional violation, he cannot establish municipal liability under *Monell*. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Because Plaintiff has not raised a genuine dispute of material fact as to whether Defendants deprived him of a protected interest without constitutionally adequate process, Defendants are entitled to summary judgment on this claim.[1]

**B. Negligence**

Defendants move for summary judgment on the negligence claim, contending that they owed no individualized duty, that their resource allocation decisions are protected by discretionary immunity, and that the radio system did not cause Plaintiff's injuries.

---

[1] Plaintiff's declaration states that Defendants medically separated him on July 8, 2026. ECF No. 64-1 at 5 ¶ 14. The separation occurred nearly eleven months after Plaintiff filed the Second Amended Complaint, and Plaintiff did not seek leave to supplement his pleading under Fed. R. Civ. P. 15(d). Because Plaintiff cannot add the separation as a new deprivation through his declaration, *see Hartzell*, 130 F.4th at 744-45, the Court does not address whether the separation complied with due process.

"The elements of negligence are duty, breach, causation, and injury." *Keller v. City of Spokane*, 44 P.3d 845, 848 (Wash. 2002). Proximate cause "is composed of both cause in fact and legal cause." *Meyers v. Ferndale Sch. Dist.*, 481 P.3d 1084, 1089 (Wash. 2021) (citation omitted). "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Hartley v. State*, 698 P.2d 77, 83 (Wash. 1985) (citation omitted). "Proximate cause is generally a fact question for the jury," but the Court may decide it when "reasonable minds could not differ." *Meyers*, 481 P.3d at 1089 (citation omitted).

For purposes of summary judgment, the Court assumes without deciding that Defendants owed and breached a duty and that a radio problem prevented officers from receiving one or more of Plaintiff's post-shooting transmissions. Even on those assumptions, Plaintiff must identify evidence from which a reasonable jury could find that the missed transmission caused or worsened his injuries.

Plaintiff testified that he had not reported his location or requested assistance before the suspect opened fire. ECF No. 57-1 at 83:13-15, 84:22-25. A failed transmission therefore could not have caused the shooting itself. Plaintiff instead contends that the failure delayed assistance, required him to continue pursuing the suspect while wounded, and worsened his physical and psychological injuries. ECF No. 64 at 9–10; ECF No. 64-1 at 1 ¶ 2. Lombardi was already at the scene.

He directed Plaintiff behind his patrol vehicle and reported the gunfire and Plaintiff's injury by radio. ECF No. 57-1 at 85:11-86:17; ECF No. 55-1 at 2-3. Plaintiff reached cover approximately thirteen seconds after the gunfire began. ECF No. 69 at 4 ¶¶ B.6, B.9. Both officers continued transmitting information, multiple officers participated in locating the suspect, and officers took the suspect into custody approximately three minutes after the shooting. *Id.* at 4 ¶¶ B.10-12. Plaintiff does not explain what additional assistance a missed transmission delayed, how receipt of the transmission would have ended his participation sooner, or what harm an earlier response would have prevented.

Plaintiff's declaration generally attributes his physical and psychological injuries to the radio failure, but it does not explain how a missed transmission, rather than the shooting and armed confrontation, caused or worsened those injuries. ECF No. 64-1 at 1 ¶ 2. The medical records describe a gunshot wound with fractures and retained bullet fragments and attribute Plaintiff's trauma-related condition to the shooting and armed confrontation. *Id.* at 11, 14-15. No provider attributes the severity of either condition to a missed transmission or delayed response.

Because no reasonable jury could find that a failed transmission caused the shooting or worsened Plaintiff's injuries, Defendants are entitled to summary judgment on this claim.

**C. Intentional Misrepresentation**

Defendants seek summary judgment on the intentional misrepresentation claim, asserting that Plaintiff cannot identify a knowingly false representation or show that he relied on any of Defendants' statements. ECF No. 53 at 18-20. Plaintiff responds that statements concerning Defendants' funded plans to repair or replace the radio system were false when made and that later delays support an inference that officials never intended to perform. ECF No. 64 at 10.

"There are nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence: (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970 (Wash. 2012) (citation omitted). A promise of future performance ordinarily is not a representation of existing fact. *West Coast, Inc. v. Snohomish Cnty.*, 48 P.3d 997, 1000 (Wash. Ct. App. 2002). A promise may nevertheless support a fraud claim if the speaker made it to deceive and had no intention of performing when the promise was made. *Sprague v. Sumitomo Forestry Co.*, 709 P.2d 1200, 1206 (Wash. 1985).

At the pleading stage, the Court accepted Plaintiff's allegations as true and explained that reliance presented "a factual issue for a later date." ECF No. 31 at 20. At summary judgment, however, Plaintiff must identify evidence that would permit a reasonable jury to find each element of fraud under the clear, cogent, and convincing standard. He has not raised a genuine dispute of material fact as to reliance or resulting damages.

Plaintiff identifies no evidence that Moore communicated the alleged 2024 completion date to him before the July 2021 shooting. Plaintiff instead testified that, in November 2018, another officer told him the City was saving approximately $100,000 each year for a new system, but that accumulating sufficient funds might take 20 years and that the officer would "probably never see" the new system. ECF No. 57-1 at 101:9-24. The officer's statement conveyed a lengthy and uncertain replacement timeline. The July 2021 shooting occurred less than three years into that projected 20-year funding period.

Plaintiff argues that he continued performing dangerous duties and delayed external reporting in reliance on Defendants' statements. ECF No. 64 at 10. His brief cites no evidence supporting either assertion. Although Plaintiff testified that he trusted the information he received, he did not connect that trust to either asserted decision. ECF No. 57-1 at 140:11-15. The 2023 statements postdated the shooting by two years and therefore could not have caused his 2021 injury. ECF

No. 65-2 at 7-8. Plaintiff identifies no later career harm caused by reliance on either statement.

Because no reasonable jury could find, by clear, cogent, and convincing evidence, that Plaintiff actually and justifiably relied on Defendants' statements and suffered resulting damages, Defendants are entitled to summary judgment on this claim.

## CONCLUSION

For the reasons discussed above, the Court grants Defendants' motion.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, **ECF No. 53**, is **GRANTED**.
2. Plaintiff's procedural due process, negligence, and intentional misrepresentation claims are **DISMISSED with prejudice**.
3. All pending motions, including **ECF No. 72**, are **DENIED** as moot.
4. All remaining deadlines and hearings are **STRICKEN**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, **enter judgment** for Defendants, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 22, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE